# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:17-cv-00184-MR

JASMINE METCALF, )
)
        Plaintiff, )
)
vs. ) **MEMORANDUM OF**
) **DECISION AND ORDER**
NANCY A. BERRYHILL, )
Acting Commissioner of Social )
Security )
)
        Defendant. )
_____ )

**THIS MATTER** is before the Court on the Plaintiff's Motion for Judgment on the Pleadings [Doc. 10] and the Defendant's Motion for Summary Judgment [Doc. 12].

## I. PROCEDURAL BACKGROUND

The Plaintiff, Jasmine Metcalf ("Plaintiff"), asserts that her bipolar disorder, migraine headaches, post-traumatic stress disorder, asthma and obesity constitute severe impairments under the Social Security Act (the "Act") rendering her disabled. On April 15, 2013, the Plaintiff filed an application for disability benefits under Title II and Part A of Title XVIII, alleging an onset date of March 1, 2011. [Transcript ("T.") at 203]. On May 6, 2013, the Plaintiff also filed an application for supplemental security

income benefits under Title XVI of the Act, alleging an onset date of March 1, 2011. [T. at 207]. The Plaintiff's application was denied initially and upon reconsideration. [T. at 130, 142]. Upon Plaintiff's request, a hearing was held on November 30, 2015, before an Administrative Law Judge ("ALJ"). [T. at 10, 160]. Present at the hearing were the Plaintiff; Holly Fairbairn, Plaintiff's attorney; and a vocational expert ("VE"). [T. at 34]. On January 21, 2016, the ALJ issued a decision, wherein the ALJ concluded that the Plaintiff was not disabled. [T. at 10-21]. On May 16, 2017, the Appeals Council denied the Plaintiff's request for review of the ALJ's Decision, thereby making the ALJ's decision the final decision of the Commissioner. [T. at 1-4]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards

and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013).

## III.  THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful

3

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration Regulations set out a detailed five-step process for reviewing applications for disability. 20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden is on the claimant to make the requisite showing at the first four steps. Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of the claimant. Id. (citing 20 C.F.R. § 416.920). If not, the case progresses to step two, where the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies, or a combination thereof, which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments

4

("Listings") found at 20 C.F.R. 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education or work experience. Id. If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions. SSR 96-8p; 20 C.F.R. §§ 404.1546(c); 404.943(c); 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work. 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 634. If the claimant can still perform his or her past work, then the claimant is not disabled. Id. Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner. At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work which exists in substantial numbers in the national economy. Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." 20 C.F.R. §§

404.1520, 416.920; Mascio, 780 F.3d at 635. If the Commissioner succeeds in shouldering her burden at step five, the claimant is not disabled and the application for benefits must be denied. Id. Otherwise, the claimant is entitled to benefits. In this case, the ALJ rendered a determination adverse to the Plaintiff at step five.

## IV. THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date, March 1, 2011. [T. at 20]. At step two, the ALJ found that the Plaintiff has severe impairments including bipolar disorder, post-traumatic stress disorder, migraine headaches, asthma and obesity. [Id.]. At step three, the ALJ determined that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the Listings. [Id. at 13]. The ALJ then determined that the Plaintiff, notwithstanding her impairments, has the RFC:

> [T]o perform medium work as defined in 20 C.F.R. § 416.1567(c) and 416.967(c), except with the following limitations: no use of ladders; no exposure to dangerous machinery, or unprotected heights; and occasional exposure to dust/fumes or other respiratory irritants. [Plaintiff] is limited to simple routine tasks and instructions performed in two-hour blocks before needing a break; occasional contact with co-workers; contact with the general public up to 10% of the time; and occasional work place changes or work method changes.

6

[Id. at 16].

At step four, the ALJ identified Plaintiff's past relevant work as a nurse assistant and medication technician. [Id. at 21]. The ALJ observed, however, that the Plaintiff "is unable to perform any past relevant work." [Id.].

With the Plaintiff having carried her burden through the first four steps, the ALJ then assessed whether, at step five, the Commissioner could meet her burden of showing the availability of jobs Plaintiff is able to do, given her RFC. [Id. at 21-2]. Based upon the testimony of the VE, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, the Plaintiff is capable of performing other jobs that exist in significant numbers in the national economy, including laundry worker, hand packager, and machine feeder. [Id. at 22]. The ALJ therefore concluded that the Plaintiff was not "disabled" as defined by the Social Security Act since March 1, 2011, the alleged onset date. [Id.].

## V. DISCUSSION[1]

In her sole assignment of error, the Plaintiff contends the ALJ erred by failing to account for her migraine headaches in the RFC assessment. [Doc. 11 at 3]. Specifically, she argues that the ALJ erred in failing to provide a

---

[1] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

logical bridge between the evidence of record and the RFC assessment. [Id. at 3-8]. This incomplete analysis, Plaintiff contends, led to an incomplete or inaccurate assessment of her abilities, which in turn resulted in an unsubstantiated RFC. Consequently, the Plaintiff argues, the ALJ's hypothetical to the VE and her ultimate determination, both of which relied upon this unsubstantiated RFC, are equally unsupported, and the matter must be remanded for further proceedings. [Id.].

Residual functional capacity (RFC) is an administrative assessment by the Commissioner of what a claimant can still do despite his or her physical or mental limitations. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); 20 C.F.R. §§ 404.1546(c); 404.943(c). Social Security Ruling 96-8p explains how adjudicators should assess a claimant's RFC. The Ruling instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations.[2] SSR 96-8p; see also Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that

---

[2] The functions listed in the regulations include the claimant's (1) physical abilities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching);" (2) mental abilities, "such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting;" and (3) other work-related abilities affected by "impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions." 20 C.F.R. § 416.945.

remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review) (citation omitted). This "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Mascio, 780 F.3d at 636 (internal quotation marks omitted). "[T]he ALJ must *both* identify evidence that supports [her] conclusion and build an accurate and logical bridge from that evidence to [her] conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (brackets and internal quotation marks omitted). Such analysis, is a "necessary predicate" to determining whether substantial evidence supports the ALJ's findings. Monroe, 826 F.3d at 189 (quoting Radford, 734 F.3d at 295).

Here, the ALJ found that Plaintiff's migraine headaches are a severe impairment because they significantly limit her ability to perform basic work activities. [T. at 12]. On the basis of Plaintiff's alleged intensity, persistence, and limiting effects of her migraine headaches, the ALJ found the Plaintiff has moderate restrictions in activities of daily living. [Id. at 14] Specifically, the ALJ stated:

> [Plaintiff] also alleged migraine headaches occurring no less than four times per month lasting all day long rendering her unable to perform any activity. Thus, the finding of a moderate restriction in this category is supported.

[Id.]. In summarizing the Plaintiff's testimony, the ALJ again noted the Plaintiff's allegations concerning the alleged severity of her migraine headaches, stating:

> In terms of migraines, the [Plaintiff] testified that she experiences at least 3 or 4 headaches per month each lasting all day long, requiring her to have to go to a dark room in order to get relief, and that she is unsure of the triggers.

[Id. at 18]. After finding the Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, the ALJ concluded that the Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." [Id.].

In formulating the RFC, the ALJ began her discussion of Plaintiff's migraine headaches by stating:

> In terms of [Plaintiff's] asthma and migraines, the medical evidence of record details that the [Plaintiff] was initially taking Imitrex for her headaches (which was reportedly not effective), but is now taking only over-the-counter medication. As discussed earlier in this decision, the [Plaintiff] testified that she primarily "has to go into a dark room" in order to get relief.

[Id.]. The ALJ, however, did not provide any analysis or explanation as to how she considered or accounted for the Plaintiff's migraine headaches in formulating the RFC. Rather, the ALJ's discussion abruptly transitioned to Plaintiff's asthma before concluding,

> with reasonable consideration of factors exacerbating asthma, the portion of the [RFC] pertaining to exposure to dust/fumes and other pulmonary irritants is supported.

[Id. at 18-9].[3] Despite previously discussing the Plaintiff's migraine headaches in her decision, the ALJ provided no further analysis as to what, if any, functional limitations are caused by the Plaintiff's migraine headaches. This lack of analysis is further compounded by the ALJ's failure to articulate her credibility findings with regard to Plaintiff's testimony concerning her migraine headaches. If the ALJ determines that a claimant is not credible, she must "build an accurate and logical bridge from the evidence to h[er] conclusion" Brown v. Comm'r Soc. Sec. Admin., No. 16-1578, 2017 WL

---

[3] The Defendant argues that while the ALJ could have been more explicit, "her reasoning is clear," in that the Plaintiff's "failure to pursue other treatment options suggests that her migraines were not as severe as alleged." [Doc. 13 at 8]. The Defendant's argument, however, is a bridge too far. The Court "may not guess at what an agency meant to say, but must instead restrict itself to what the agency actually did say." Nken v. Holder, 585 F.3d 818, 822 (4th Cir. 2009). If the ALJ intended to reason that the Plaintiff's failure to pursue other treatment options for her migraine headaches suggested Plaintiff's alleged symptoms were not as severe as alleged, then she was required to build a logical bridge from that evidence to her conclusion. See Monroe, 826 F.3d at 189. The Commissioner cannot subsequently provide that bridge for the ALJ.

4320263, at *14 (4th Cir. Sept. 29, 2017) (quoting Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016)). The ALJ failed to do so here.

Pointing to the ALJ's discussion of the Plaintiff's obesity, the Defendant argues that the ALJ adequately considered and accounted for Plaintiff's migraine headaches in formulating the RFC assessment. In considering the Plaintiff's obesity, the ALJ stated:

> However, in terms of the [Plaintiff's] obesity, treatment notes establish the claimant's weight to be 180.25 pounds in December of 2013 and 203.50 pounds in May of 2015, resulting in a BMI of 36.04 demonstrative of obesity (Exhibit 9F, 5 and 7). Thus, I have taken into consideration the possible effects of obesity in combination with episodic migraine headaches and asthma, in assessing the portion of the [RFC] pertaining to no use of ladders and no exposure to dangerous machinery and unprotected heights.

[Id. at 19]. The ALJ, however, did not explain how she considered or accounted for the Plaintiff's migraine headaches in reaching this conclusion. Further, the ALJ did not indicate what evidence, testimony, medical records, or opinion evidence supports these limitations. To the contrary, the treatment notes cited by the ALJ, without more, appear to support the Plaintiff's allegations concerning her migraine headaches. Specifically, the treatment notes cited by the ALJ provide that the Plaintiff

> needs med[ications] for nausea from med[ications] and med[ication] to prev[e]nt migraines, used t[o] be

12

> on med[ications] but cannot afford the Imitrex now, did not work so great anyway. Has [one a week] then sometimes[s] multi[ple a] week, went to ER for this.

[T. at 382]. Without further explanation, the ALJ's consideration of the Plaintiff's migraine headaches in this respect is far from clear.

It is evident that the ALJ failed to provide an analysis of the Plaintiff's migraine headaches that both sufficiently identifies the evidence that supports her conclusions and builds a logical and accurate bridge from that evidence to her conclusions. As such, the Court is unable to effectively review the ALJ's assessment of the Plaintiff's migraine headaches. Because the Court cannot determine whether the ALJ properly evaluated the Plaintiff's alleged intensity, persistence, and limiting effects of her migraine headaches, the Court cannot say that the Plaintiff's RFC was properly addressed or that the ALJ's ultimate decision was supported by substantial evidence. See Patterson v. Comm'r., 846 F.3d 656, 662 (4th Cir. 2017). For the reasons stated, the Court concludes that remand is required.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 10] is **GRANTED** and the Defendant's Motion for Summary Judgment [Doc. 12] is **DENIED**. Pursuant to the power of this Court to enter judgment affirming, modifying or reversing the decision of the

Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and the case is hereby **REMANDED** for further administrative proceedings consistent with this opinion. A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: September 26, 2018

Martin Reidinger
United States District Judge